IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 07-CR-51 |
| JOHN J. KELLER | : | |
| | : | |
| Defendant | : | |

**<u>MEMORANDUM OPINION & ORDER</u>**

GOLDEN, J.                                                                                              MAY 19, 2008

Before the Court are defendant's motions for judgment of acquittal and new trial. The Court will deny the motions for the reasons that follow.

## BACKGROUND

A grand jury indicted defendant, an attorney, for seventeen counts of wire fraud arising from a scheme under which he embezzled approximately $225,000 from one of his clients. Defendant withdrew the client's funds from his Interest on Lawyer Trust Account ("IOLTA Account"), where he was allegedly holding the monies for the victim, contending that he took the money as authorized fees for work he performed for the victim. Rejecting this defense, a jury convicted defendant of twelve of seventeen counts of wire fraud.

## ANALYSIS

1.      **Motion For Judgment of Acquittal**[1]

When considering a motion for judgment of acquittal under Federal Rule of Criminal

---

[1] The arguments defendant asserts in favor of his motion for judgment of acquittal are not attached to his motion, but rather contained in a memorandum that he provided the Court on February 10, 2008, when he moved for judgment of acquittal following the close of the government's case-in-chief. The Court denied his motion, and he renewed it following the verdict.

Procedure 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This standard is in deference "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.; see also United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) ("We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence."). It is not for this Court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt," Woodby v. I.N.S., 406 U.S. 276, 282 (1966), or to weigh the evidence or assess the credibility of witnesses, Burks v. United States, 437 U.S. 1, 16 (1978), because to do so would "impinge[] upon 'jury' discretion." Jackson, 443 U.S. at 319. Rather, the narrow task before the Court is to review the jury findings "only to the extent necessary to guarantee the fundamental protection of due process of law." Id.; see also United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) ("Courts must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [their] judgment for that of the jury.").

In order to convict a defendant for wire fraud, "the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme." United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001). The defendant argues that he did not have specific intent to defraud because he believed he was permitted to withdraw his client's funds from his IOLTA account, and that

depositing the checks in his bank account did not result in an interstate use of the wires in furtherance of his alleged scheme.

The evidence upon which the jury could have reasonably concluded that defendant knowingly and willfully participated in a scheme to defraud with specific intent to defraud is overwhelming.  The government presented the testimony of the victim, tape-recorded conversations between the defendant and the victim discussing the status of the money he was holding for her, and dozens of checks, account statements, and letters from which the jury found that defendant withdrew the victim's money from his IOLTA account without authorization while representing that her money remained in the account.

Defendant's strategy at trial was essentially to admit that he took the money from his IOLTA account, but that he had no specific intent to defraud because he believed the victim had authorized his withdrawals.  Defendant reasserts this argument in his motion for judgment of acquittal, but it is unhelpful because it necessarily turns on the jury's assessment of defendant's testimony, during which he claimed that he thought he was authorized to take the money, and the victim's testimony, during which she claimed that she did not authorize defendant to take the money.  To credit defendant's argument that the victim authorized his withdrawal of her money, the Court would have to reject the jury's assessments of the credibility of the defendant and the victim.  The Court cannot do so without impinging upon the jury's role.  Burks, 437 U.S. at 16.

The defendant also argues that the government presented insufficient evidence as to his use of an interstate wire communication in furtherance of his scheme.  Before further discussion, the Court notes that to "be part of the execution of the fraud . . . the use of the [wires] need not be an essential element of the scheme," but rather incidental to the scheme or just a "step in [the]

plot." Schmuck v. United States, 489 U.S. 705, 710-11 (1989) (internal citations omitted).  The defendant thus faces an uphill climb in this challenge because it is unnecessary that the use of the wires be central to his scheme, and the Court must view the evidence in the light most favorable to the government.

During the government's case-in-chief, the jury heard testimony from a representative from defendant's bank and a representative from the bank's clearing house.  The testimony explained that clearing the checks defendant cashed had both an electronic and a paper component.  Defendant's bank exchanged a paper check with the Federal Reserve Bank in Philadelphia, and also sent a "cash letter" reflecting the amount of the checks cashed that day, including defendant's check, to its New York clearing house over interstate wires.  The checks were not irrevocably debited to defendant's account until they had been cleared in both Philadelphia and New York.  The government also presented evidence connecting the checks charged in the indictment to the above process.  After listening to the testimony and cross-examination of these representatives, the jury concluded that, as to twelve of seventeen counts, defendant used the interstate wires in furtherance of his scheme to defraud.

The jury finding notwithstanding, defendant asserts that, under Kann v. United States, 323 U.S. 88 (1944), interstate check clearing may not satisfy the use of the wires element of a federal fraud prosecution.[2]  In Kann, corporate executives defrauded shareholders by routing corporate profits through a dummy corporation and then paying the profits back to themselves as salaries from the dummy corporation.  Id. at 89.  To complete the fraud, the defendants caused

---

[2] Kann involved the federal mail fraud statute, 18 U.S.C. § 1341, but because the mail and wire fraud statutes share the same language, the Supreme Court instructs that the same analysis applies to both.  Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987).

4

the dummy corporation to mail paychecks in their favor to third party banks, from which the defendants then withdrew the funds. Id. at 89-90. The government charged three individual defendants with three individual schemes involving one check apiece. Id. at 90-91. Explaining that once the check was cashed, "[t]he scheme in each case had reached fruition," the Court overturned the convictions, finding that the use of the mails was not sufficiently related to the scheme to defraud. Id. at 94. The Court did, however, leave open the possibility that "the mere clearing of a check . . . in some settings, would be enough" to support a federal fraud prosecution. Id. at 95.

Unlike Kann, the Indictment upon which defendant was convicted does not limit the scheme to a single transaction. The target of defendant's scheme was $225,000 of his client's funds held in his IOLTA account. Indictment at ¶ 10 (Dkt. Document No. 1). Defendant did not seek to acquire this money by cashing a single check, rather, he took the money over a period of two years by cashing smaller checks. Id. at ¶¶ 11-12. Twelve of those checks formed the basis of the twelve counts on which the jury convicted defendant.

Defendant's scheme thus involved two basic components. First, defendant had to convince the victim that the money was still in his IOLTA account so that the victim did not demand the money back. Second, defendant had to continually draw on his IOLTA account, all the while reassuring the victim that the money was safe. Defendant's representations to the victim were thus the fraud, whereas defendant's cashing of the checks constituted a use of the wires. Defendant's ability to continue cashing checks against his IOLTA account, while perhaps not the most important aspect of the scheme, was nonetheless a necessary part of its success.

Defendant having been charged and convicted of an ongoing scheme involving multiple

checks, this case is more like Schmuck, 489 U.S. at 705. There, defendant sold used cars with their odometers rolled back and used the mails to clear title on the cars after his sales. Id. at 707. The defendant argued that, under Kann, his mailings were not part of his scheme to defraud, but the Supreme Court affirmed his convictions, explaining that whereas the Kann defendants' schemes reached fruition before the mailing, the Schmuck defendant's fraud could not have continued unless he was able to keep clearing the titles of the cars he sold. Id. at 712. Here, as in Schmuck, defendant's fraud "was not a 'one-shot' operation," but rather an "ongoing fraudulent venture," id. at 711, because it involved multiple checks over a course of time. Defendant's scheme here hinged on the continued clearing of his checks just as the Schmuck defendant's fraud depended on the continued clearing of title of the doctored cars. Following Schmuck, federal appellate courts have found that the interstate clearing of checks as part of an ongoing scheme to defraud satisfies the use of the wires element of federal wire fraud. See United States v. Franks, 309 F.3d 977, 978 (7th Cir. 2002) (Finding that "the interstate transportation facilitated the repetition of acts that were vital to making the scheme profitable."); United States v. Mills, 199 F.3d 184, 190 (5th Cir. 1999) (Holding "the interstate wire communications between [several Federal Reserve branches] were at the heart the scheme and were of necessity interstate.").

Relying on Schmuck, the Third Circuit rejected an argument similar to defendant's in United States v. Tiller, 302 F.3d 98 (3d Cir. 2002). There, defendant worked for a firm that the City of Philadelphia contracted to monitor individuals receiving workers' compensation rehabilitation benefits. Id. at 100. Employees of defendant's company were eligible for bonuses tied to the amount of visits they made to the rehabilitating individuals, and defendant inflated her

6

number of visits and sent her invoices to the city's payroll processor, who then mailed checks to defendant's employer.  Id.  A jury convicted defendant of several counts of mail fraud, and defendant argued that she should have been acquitted because, under Kann and similar cases, the mailings between the city, its payroll vendor, and defendant's employer were not incident to an essential part of defendant's scheme to defraud.  Id. at 100-01.  The Third Circuit rejected her argument, finding Tiller distinguishable from Kann because the defendant's scheme was ongoing and the mailings facilitated defendant's continued relationship with her employer, upon which the fraud depended.  Id. at 102-03.  The present case is similar.  Defendant's fraud was ongoing, as it continued over a course of years, and it depended on his continued relationship with the bank that cashed his checks because "if the early checks had not been sent interstate and cleared, the later checks would not have been credited to [defendant's] account, and [his] scheme would have been foiled."  Franks, 309 F.3d at 978.

Upon reviewing the evidence at trial with the appropriate deference to the jury's findings, and upon consideration of the relevant authorities, the Court concludes that "a rational jury could have found that the [use of the wires was] part of the execution of the fraudulent scheme." Schmuck, 489 U.S. at 712.

**2. Motion For New Trial**

*A. Jury Instructions*

Defendant alleges that he is entitled to a new trial because the Court refused to instruct the jury as he requested on the use of the wires element of his crime.  Defendant objected to the Court's jury charge at sidebar following the instruction, and the Court gave him an exception. When a defendant challenges a district court's instructions, the jury "instructions will be upheld

if the charge as a whole fairly and adequately submits the issues in the case to the jury." Govt. of Virgin Islands v. Fonesca, 274 F.3d 760, 769 (3d Cir. 2001) (quotations and citations omitted).

Defendant claims that the Court erred in refusing to instruct the jury "to the effect that, in order for the wire transfer to be 'in furtherance of the scheme,' it must be sufficiently related to the scheme, or, in other words, the scheme's completion or the prevention of its detection must have depended in some way on the charged wire transmission." Def.'s Mot. for New Trial at ¶ 11 (Dkt. Document No. 100). Relying on the Model Third Circuit Jury Instructions, the Court charged the jury regarding the wire transfer element, *inter alia*, that:

> The third element that the government must prove beyond a reasonable doubt is that in advancing, furthering, or carrying out the scheme, John J. Keller transmitted a writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of a writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce . . . [T]he government must prove beyond a reasonable doubt that a transmission by a wire, radio, or television communication facility in interstate commerce was, in fact, *used in some manner to further, or to advance, or to carry out the scheme to defraud*.

Ct.'s Final Jury Instructions at pp. 18-19 (emphasis supplied). The difference is thus between defendant's request that the Court instruct the jury that defendant's scheme to defraud "depended in some way" on the use of the wires, and the Court's actual instruction that the wires must have been "used in some manner to further . . . the scheme to defraud." Ct's Final Jury Instructions at p. 19. The Court can discern no meaningful difference between the requested instruction and the given one, and, moreover, no "litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995). The instruction as given was also a correct statement of the law because it explained that defendant's use of the wires must have been a part of the scheme, but need not have been the key

8

part.  See Schmuck, 489 U.S. at 710-11 ("It is sufficient for the [use of the wires] to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'") (internal citations omitted).  The Court thus finds that "the charge as a whole fairly and adequately submit[ed] the issues" to the jury, and will deny the motion.  Fonseca, 274 F.3d at 769 (quotations and citations omitted).

  B.  *Prosecutor's Remarks*

  Defendant also claims that the prosecutor's comments during his opening and closing statements were so inflammatory as to require a new trial.  When a defendant requests a new trial on such grounds, the "relevant question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotations and citations omitted).  Where, as here, the defendant did not object to the allegedly inappropriate statements during trial, the result shall stand in the absence of plain error.  United States v. Moore, 375 F.3d 259, 263 (3d Cir. 2004).

  Although defendant did not object during trial, his brief makes references to the prosecutor's sarcasm, laughter, and comparison of defendant to a young boy caught stealing Oreo cookies.  These comments are not of the type that would deprive defendant of a fair trial.  See United States v. Brown, 938 F.2d 1482, 1488-89 (1st Cir. 1991) (affirming district court's denial of motion for new trial after, over defendant's objection, prosecutor sarcastically likened defendant to child caught with his hands in the cookie jar); see also United States v. Cathey, 591 F.2d 268, 273-74 (5th Cir. 1979) (holding that "cookie jar" remark to grand jury did not warrant dismissal of the indictment); United States v. Hill, 481 F. Supp. 558 (E.D. Pa. 1979) (discussing the usefulness of the "cookie jar" analogy in explaining legal concepts to a jury), rev'd on other grounds, 655 F.2d 512 (3d Cir. 1981).  Moreover, the Court instructed the jury that "what

the lawyers said is not evidence," Ct.'s Final Jury Instructions at p. 3, and the fact that "the jury saw fit to acquit on" Counts 1 to 5 "indicates it heeded this instruction." Brown, 938 F.3d at 1489.  The Court would also be remiss not to mention the overwhelming evidence against the defendant.  Viewing the government's opening and closing as a whole, and in view of the other circumstances of the case, the Court sees no evidence of plain error.

      An appropriate Order accompanies this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | :  CRIMINAL ACTION |
| | : |
| vs. | : |
| | :  NO.  07-CR-51 |
| JOHN J. KELLER | : |
| | : |
| Defendant | : |

**<u>ORDER</u>**

AND NOW, this 19th day of May, 2008, it is hereby ORDERED that defendant's motion for judgment of acquittal (Document No. 100) and motion for new trial (Document Nos. 100 and 103) are DENIED.

BY THE COURT:

/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.